**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 18-cv-01357-CMA-KMT

SCOTT A. BEEBE,

      Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARTMENT OF CORRECTIONS,

      Defendant.

---

## ORDER REGARDING VARIOUS PRETRIAL MOTIONS

---

This matter is before the Court on Plaintiff Scott A. Beebe's Objection to the United States Magistrate Order on Plaintiff's Motion to Strike Defendants' Rebuttal Expert Witness. (Doc. # 66), Plaintiff's Motion to Exclude from Admission at Trial All Evidence and Testimony of Defendants' Witness Jason A. Page (Doc. # 83), Defendants' Motion to Exclude Expert Testimony of Dr. D'Orazio pursuant to Federal Rule of Evidence 702 (Doc. # 84), and Plaintiff's Rule 37 Motion to Strike Witnesses for Violations of Rule 26 (Doc. # 82). These Motions have been fully briefed.[1] The Court considers each Motion in turn.

---

[1] Neither party requested a hearing on these motions, and the Court finds that a hearing is not necessary under these circumstances.

# I.    **BACKGROUND**

Magistrate Judge Tafoya's Recommendation (Doc. # 62) and this Court's Order adopting the Recommendation (Doc. # 87) provided a thorough recitation of the factual and procedural background in this case. The Recommendation and this Court's previous Order are both incorporated herein by reference and the facts will be repeated only to the extent necessary to address the instant Motions.

Plaintiff was convicted and sentenced to probation for a Colorado sex offense on April 13, 2002. Probation was revoked on November 30, 2007, and Plaintiff was resentenced to a minimum mandatory two years to life indeterminate sentence to the Colorado Department of Corrections ("CDOC"), which was modified on May 13, 2009, to reflect the opportunity for discretionary rather than mandatory parole. Plaintiff is currently an inmate at the Centennial Correctional Facility ("CCF") within the CDOC. (Doc. # 35 at ¶¶ 5, 10–11.)

At all times throughout his incarceration, Plaintiff alleges that he has had "mental impairments of Axis I: 300.02 Generalized Anxiety Disorder, with Panic Disorder; Axis I: 2000.4 Persistent Depressive Disorder, which includes Major Depressive Disorder, and Axis II: 301.4 Obsessive/Compulsive Personality Disorder (OCD)." (*Id.* at ¶ 8.) Plaintiff further alleges that such mental impairments "substantially limit [his] concentration, thinking, communicating, and brain function." (*Id.* at ¶ 9.) Moreover, Plaintiff alleges that these mental impairments cause him to experience "excessive anxiety and worry, restlessness, and difficulty concentrating, accompanied by overstimulation of his

nervous system, accelerated heart rate, shortness or irregularity of breath, muscle tension and dizziness, all of which are exacerbated by the prospect of and actual taking of a polygraph." (Doc. # 35 at ¶ 22.)

Plaintiff has been and currently is admitted to and participating in the Sex Offender Treatment and Monitoring Program ("SOTMP"). (*Id.* at ¶¶ 4, 12.) To qualify for permission to receive parole, Plaintiff must earn a "Successful Progress" status by meeting seven treatment criteria, the second of which is central to this case. (*Id.* at ¶¶ 15–17.) The second criterion requires "verification of sexual history 'through *either* the . . . polygraph . . . *or* other clinical indicators" ("Second Criterion"). (*Id.* at ¶ 17 (quoting Colo. Sex Offender Mgmt. Bd., Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders 304, LS 4.210(A) (April 2018)) (emphasis in original).) The SOMB Standards provide that "other clinical indicators" may include "scores on dynamic risk assessments" and "behavioral observations." (*Id.* at ¶ 19 (internal citations omitted).)

Plaintiff alleges that he routinely fails the polygraph component of the Second Criterion as a result of his alleged disabilities. (*Id.* at ¶¶ 18, 22–23.) As such, Plaintiff requested an Americans with Disabilities Act ("ADA") accommodation from Defendants, seeking a waiver of the polygraph test and the ability to use "other clinical indicators" so that he can meet the Second Criterion. (*Id.* at ¶¶ 24–38); (Doc. # 62 at 2). Defendants denied Plaintiff's request. (Doc. # 35 at ¶¶ 25, 32–34.)

On June 1, 2018, Plaintiff filed suit against Defendants (Doc. # 1), and on September 24, 2018, Plaintiff filed his Amended Complaint (Doc. # 35), wherein he

asserted a single claim for Violation of Title II of the ADA based on two theories. First, Plaintiff argues that Defendants discriminated against him based on his disabilities when they denied his request for an accommodation to waive the polygraph examination and use "other clinical indicators." Second, Plaintiff contends that, as a result of Defendants' failure to accommodate him, he was denied meaningful access to SOTMP services and rehabilitation benefits because his participation in polygraph examinations causes harm to him. (Doc. # 35 at ¶¶ 65–69.) Defendants respond that Plaintiff's disabilities do not affect the accuracy of his polygraph examinations, and as such, an accommodation is unnecessary. (Doc. # 67 at 15.) Defendants alternatively assert that Plaintiff is not otherwise qualified for parole eligibility. (Doc. # 67 at 18–19.)

In support of these theories, Plaintiff and Defendants intend to call several witnesses, some of whom will provide expert testimony. At issue in the instant motions are Plaintiff's proffered expert witness Dr. Deidre D'Orazio and Defendants' proffered expert witness James Page and fact witness Christina Ortiz-Marquez, along with a legion of other witnesses who were allegedly belatedly disclosed. These witness disclosures spurred both parties to file several motions now before the Court.

## II.   PLAINTIFF'S OBJECTION TO UNITED STATES MAGISTRATE ORDER ON MOTION TO STRIKE DEFENDANTS' REBUTTAL EXPERT WITNESS (DOC. # 66)

On February 22, 2019, Plaintiff moved the Court to exclude Defendants' retained rebuttal expert Jason A. Page because Mr. Page's rebuttal report exceeded the scope of Plaintiff's proffered expert testimony and purportedly sought to introduce "a different theory" and "methodology" than that from Plaintiff's expert witnesses. (Doc. # 44 at ¶¶ 7,

11–13.) As such, Plaintiff contends that, under the Tenth Circuit's *103 Investors I, L.P. v. Square D Company* decision, Mr. Page's rebuttal testimony is improper and should have previously been disclosed as an affirmative report. (*Id.* at ¶¶ 8–10 (citing *103 Investors I, L.P. v. Square D Company*, 372 F.3d 1213 (10th Cir. 2006)).) After briefing was completed (Doc. ## 60, 61), on April 9, 2019, Magistrate Judge Tafoya held a hearing on Plaintiff's Motion. (Doc. # 63.)

At the conclusion of the hearing, Magistrate Judge Tafoya denied Plaintiff's Motion and concluded that Mr. Page was timely disclosed as a rebuttal expert and that his rebuttal opinion did not "introduce a different methodology into the case." (*Id.* at 1.) During the hearing, the Magistrate Judge rejected Plaintiff's argument that Defendants sought to admit polygraph examination evidence through Mr. Page's proffered rebuttal report. (Doc. # 65 at 6–12, 17, 24, 31–32.) Moreover, Magistrate Judge Tafoya determined that Mr. Page's rebuttal report did not utilize a different methodology to rebut Plaintiff's proffered testimony because the opinion itself—that Plaintiff's conditions do not affect the accuracy of the polygraph examination results—directly rebuts Plaintiff's expert opinion—that Plaintiff's alleged disabilities prevent him from successfully completing an accurate polygraph examination. (*Id.* at 24–31.)

On April 23, 2019, Plaintiff filed his Objection to the Magistrate Judge's Order denying his motion to strike Mr. Page's testimony. (Doc. # 66.) Plaintiff avers that Magistrate Judge Tafoya's decision was "clearly erroneous and contrary to law" because Defendants have sought to introduce a new theory with Mr. Page's rebuttal report, which flies in the face of the Tenth Circuit's *Square D* decision. (*Id.* at ¶¶ 11–14.)

Specifically, Plaintiff argues that, because Mr. Page's expertise is in polygraphy, his opinion "would be bringing in a new theory and expertise to rebut the psychological and physiological based opinions of Plaintiff's experts." (*Id.* at ¶ 4.) For the following reasons, the Court disagrees with Plaintiff that Magistrate Judge Tafoya's decision was contrary to law.

## A.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Therefore, the Court applies the clearly erroneous standard to Magistrate Judge Tafoya's Order (Doc. # 63).

## B.    ANALYSIS

Federal Rule of Civil Procedure 26(a)(2)(D) provides that rebuttal expert evidence must be offered "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Proper rebuttal expert testimony is limited to rebutting or contradicting the same subject matter identified by another party as opposed to providing support only for the proffering party's case in chief. *Anderson v. Seven Falls Co.*, Case No. 12-cv-01490-RM-CBS, 2013 WL 3771300, at *9 (D. Colo. July 18, 2013) (collecting cases). Properly disclosed rebuttal expert testimony excludes the introduction of any new theory. *Square D*, 372 F.3d at 1218.

Given that Plaintiff's objection rests on the *Square D* decision, explanation thereof is instructive. *Square D* concerned a district court's exclusion of a rebuttal expert

report partially because the report projected a "totally new theory of negligence[.]" 372 F.3d at 1217. The causation of a building fire and, specifically, whether the manufacturing of the building's busways rather than an external leak into the busways caused the fire, were at issue in *Square D*. *Id.* at 1214, 1216–18. The affirmative expert reports provided that the "contamination on the bus duct which led to the fire had entered the bus ducts from an outside source[.]" *Id.* at 1217. The rebuttal expert report indicated that "contamination from a foreign liquid material" was "not a reasonable possibility" and that the cause of the fire must be attributed to the manufacturing process. *Id.* at 1218. The Tenth Circuit disagreed with the district court that the rebuttal report espoused "a new theory." *Id.* The court held that, because the affirmative reports discussed "the internal defects and contamination on the inner bus ducts," regardless of the additional detail underlying the rebuttal report, the rebuttal opinion itself "merely label[ed] the cause more specifically as a manufacturing defect[,]" and as such, did not comprise a "new theory in violation of Rule 26." *Id.*

The Court agrees with Magistrate Judge Tafoya and Defendants that Mr. Page's rebuttal report directly rebuts part of the same subject matter opined by Doctors Kleinasser and Dr. D'Orazio. The gist of Plaintiff's affirmative expert reports provide that Plaintiff's alleged disabilities and related symptoms affect the accuracy and reliability of his polygraph examinations, including Plaintiff's ability to uninhibitedly participate in the polygraph examination. (Doc. # 60-1 at 13 (Dr. Kleinasser's Report); Doc. # 60-2 at 1 (Dr. D'Orazio's Report)). Mr. Page's introductory statement provides that his rebuttal

report seeks to discuss the "veracity of the claims"[2] that Plaintiff's alleged disabilities "would negatively affect his polygraph examinations and their outcomes." (Doc. # 60-3 at 1.) Indeed, Mr. Page specifically explains how Plaintiff's disabilities and related symptoms affect Plaintiff's polygraph examinations.[3] (*Id.* at 3–5.) Such opinions directly rebut or pertain to the same subject matter of Plaintiff's proffered experts—even if the experience underlying Mr. Page's rebuttal opinion varies from that of Doctors Kleinasser and D'Orazio. Contrary to what Plaintiff might have gleaned from the *Square D* decision, the Tenth Circuit did not discuss the methodologies used by both experts in determining whether the rebuttal report addressed the same subject matter of which the affirmative experts opined. Therefore, the Court concludes that Magistrate Judge Tafoya's order was not contrary to law and was consistent with the Tenth Circuit's *Square D* decision.

Accordingly, the Court AFFIRMS the Magistrate Judge's decision to DENY Plaintiff's Motion to Strike Defendants' Rebuttal Expert Witness (Doc. # 66).

---

[2] Throughout Plaintiff's briefing and during the hearing with Magistrate Judge Tafoya, he argued that Mr. Page's use of the phrase "veracity of the claims" in the report (Doc. # 60-3 at 1) represented Defendants' cloaked effort to admit otherwise inadmissible polygraph evidence. (Doc. # 63 at 4, 8–12.) The Court disagrees. That phrase references the veracity of the claim that Plaintiff's alleged disabilities affect the polygraph examination's ability to produce accurate results—not the veracity of Plaintiff's statements made during the polygraph examinations. Thus, the *United States v. Redschlag* decision is inapplicable. 971 F. Supp. 1371 (D. Colo. 1997) (holding that polygraph examination results were inadmissible because proffering party failed to establish reliability of the polygraph and because the polygraph questions would not assist the jury).

[3] For example, Mr. Page opines that the "acute symptoms of GAD and OCD" are more likely to impact a polygraph examination by creating "inconclusive results" as opposed to a "deceptive result." (Doc. # 60-3 at 4–5.)

### III.     RULE 702 MOTIONS (DOC. ## 83, 84)

The Court next considers Plaintiff's Motion to Exclude from Admission at Trial All Evidence and Testimony of Defendants' Witness Jason A. Page (Doc. # 83) and Defendants' Motion to Exclude Expert Testimony of Dr. D'Orazio pursuant to Federal Rule of Evidence 702 (Doc. # 84).

### A.     LEGAL STANDARD

#### 1.     Framework for Admitting Expert Testimony

Under *Daubert*, the trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401, and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); F.R.E. 702 advisory comm. notes. This Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under Rule 702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp*., 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted). Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 884, 884 n.2 (quoting *Daubert*, 509 U.S. at 592). In short, "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

The requirement that testimony must be reliable does **not** mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*,

165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under the "flexible" standard of Rule 702. *Velarde*, 214 F.3d at 1208–09; *Daubert*, 509 U.S. at 594.

  2. <u>Whether an Expert is Qualified</u>

  Rule 702 sets a "liberal standard" for qualifying a witness as an expert. *United States v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995); 4 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 702.04[1][a], at 702–50 (supp. 2019). "Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding **to any degree**.'" *Robinson v. Geico Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (emphasis added) (internal quotation marks omitted). "[O]nly a relatively modest degree of specialized knowledge" is necessary. 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6265 (1997 & Supp. 2012).

  It is an abuse of discretion to exclude a witness as an expert if the witness is "generally qualified." 4 Weinstein et al., *supra*, § 702.04[1][a], at 702–52 n.6. A witness who "lacks expertise in specialized areas that are directly pertinent to the issues in question" is qualified "if the witness has educational and experiential qualifications in a general field related to the subject matter of the issue in question." *Id.* § 702.04[1][a], at

702–51; *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications.").

"It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications." *Id.* (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006)). To be qualified as an expert, a witness need not have the particular degree or training which the court believes would be the most appropriate. *Id.* § 702.04[1][a], at 702–51; *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (finding trial court abused its discretion by excluding testimony regarding the cause of a plaintiff's physical and emotional injuries on the ground that the witness lacked a degree in medicine or chemistry—the witness was adequately qualified by extensive research in toxicology). However, a witness "'should have achieved a meaningful threshold of expertise' in the given area." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (quoting *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 40 (1st Cir. 2005)).

As indicated by the use of the disjunctive "or" in Rule 702, any one of the five bases listed in the Rule may be sufficient to qualify a witness as an expert: "knowledge, skill, experience, training, or education." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994); 4 Weinstein et al., *supra*, § 702.04[1][c], at 702–57; 29 Wright & Gold, *supra*, § 6265. None of the bases is essential, and none is ranked more highly than another. *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006). Thus, a lack of practical experience does not prevent a

witness from qualifying as an expert. The focus is on whether the witness has sufficient expertise to assist the finder of fact. 4 Weinstein et al., *supra*, § 702.04[1][d]. Accordingly, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson*, 447 F.3d at 1100 (internal quotation marks omitted).

       3.    <u>Reliability and Relevance of an Expert's Opinion</u>

       Once an expert is deemed sufficiently qualified, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *United States v. MacKay*, 715 F.3d 807, 834 (10th Cir. 2013) (quoting *United States v. Avita-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012)). Additionally, courts must determine whether the expert's opinion is relevant. *York v. BNSF Ry. Co.*, No. 17-cv-1088-RM-STV, 2019 WL 764574, at *6 (D. Colo. Feb. 21, 2019).

       The goal of a trial court's assessment of an expert's opinion is to make a preliminary assessment whether (1) the reasoning or methodology underlying the witness's testimony is valid, and (2) the reasoning or methodology can be properly applied to the evidence or facts at issue. 4 Weinstein et al., *supra*, §§ 702.05[2][a] (citing *Daubert*, 509 U.S. at 592–93). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Crew Tile Distrib., Inc. v. Porcelanosa Los Angeles, Inc.*, No. 18-1029, 2019 WL 852293, at *7 (10th Cir. Feb. 21, 2019) (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003)). Accordingly,

> the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual

basis for the opinion in cross-examination. **Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [trier of fact] must such testimony be excluded**.

*First Union Nat. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005) (emphasis added) (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001)).

Ultimately, courts are required to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

## B.   ANALYSIS

### 1.   Mr. Page

#### i.   *Whether Mr. Page is Qualified*

As discussed above, Defendants intend to offer Mr. Page as a rebuttal expert to rebut Plaintiff's expert testimony providing that Plaintiff's alleged disabilities prevent accurate polygraph examination results. (Doc. # 94 at 3.) As a preliminary matter, Plaintiff moves to exclude Mr. Page from testifying as an expert witness because Mr. Page is purportedly unqualified as an expert in "pol[y]graphy, psychology or psychophysiology[.]" (Doc. # 83 at 3.) Specifically, Plaintiff argues that Mr. Page's lack of an academic degree in psychology or any specialty study or training in psychophysiology disqualifies him from providing expert testimony as to the "psychophysiological test of deception." (*Id.* at 5.) Additionally, Plaintiff asserts that Mr. Page is also unqualified because it is unknown whether Mr. Page is current with his continuing polygraph education requirements under the American Polygraph

Association Standards of Practice. (*Id.* at 5, ¶ 1; Doc. # 96 at 1–2.) Defendants respond that Mr. Page is sufficiently qualified pursuant to Rule 702 based on his extensive experience as a polygraph examiner, administering over 4,000 polygraphs, and "in interpreting the results of those examinations." (Doc. # 94 at 4.) The Court agrees.

Mr. Page's testimony is limited to whether Plaintiff's disabilities and related symptoms impact his polygraph examinations in such a way that automatically render the corresponding results as inaccurate. Indeed, the Court recognizes that Mr. Page is not a medical expert and cannot opine on whether Plaintiff's disabilities cause certain symptoms. However, Mr. Page can rely on facts and evidence pertaining to Plaintiff's disabilities and symptoms in opining on whether those disabilities and symptoms impact the results of the polygraph examination.

With respect to that opinion, Mr. Page meets the "liberal standard" for qualifying as an expert witness. *Gomez*, 67 F.3d at 1525–26. As evidenced by his curriculum vitae (Doc. # 83-1 at 6–11), Mr. Page sufficiently possesses more than a "relatively modest degree of specialized knowledge" and experience in polygraphy and administering polygraph examinations.  Wright & Gold, *supra*, at § 6265. Moreover, that Mr. Page may not be current with his APA certifications is not disqualifying. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741 ("It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications.") (quoting *Mahone*, 453 F.3d at 71). The Court is satisfied by Mr. Page's experience, training, and knowledge in polygraphy and polygraph examinations to qualify as an expert to opine on whether certain conditions of Plaintiff's disabilities prevent accurate polygraph examination results.

ii.     *Whether Mr. Page's Testimony is Relevant and Reliable*

Plaintiff next contends that the Court should exclude eight opinions set forth in Mr. Page's rebuttal report for a variety of reasons. (Doc. # 83 at 4–10.) Plaintiff applied his first challenge to "Opinion 1" of Mr. Page's rebuttal report to every other challenge. (*Id.*) Plaintiff's remaining challenges pertain Mr. Page's reliance on insufficient, imprecise, or vague facts or data. (*Id.* at 5–10.)

The Court may swiftly dispose of Plaintiff's latter challenges. Challenges to the factual basis of an expert opinion go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the basis for the opinion in cross-examination." *Benham*, 423 F.3d at 862. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [trier of fact]] must such testimony be excluded." *Id.* A review of the facts and data subject to Plaintiff's latter challenges does not reveal that Mr. Page's opinions are "so fundamentally unsupported" that his opinions would be unhelpful. To the contrary, the heart of this case involves the polygraph examination, and specifically, whether Plaintiff's disabilities affect his adequate participation in a polygraph examination. As a result, Mr. Page's testimony based on his experience in administering polygraph examinations and analyzing results therefrom would be helpful to the Court in deciding this case. Therefore, Plaintiff's challenges to whether Mr. Page relies upon insufficient, imprecise, or vague facts and data do not warrant Mr. Page's total exclusion from trial.

Plaintiff's former challenge to "Opinion 1" boils down to one main contention— that Mr. Page's expert testimony derives from inherently unreliable principles and

methods embedded in polygraphy. (Doc. # 83 at 6–7.) Plaintiff cites several cases for the proposition that "poligraphy [sic]/CQT testing" and "polygraph evidence" are neither admissible nor reliable. (*Id.*) However, Plaintiff conflates the subject of Mr. Page's testimony with polygraph evidence. Mr. Page's rebuttal report does not indicate that Defendants seek to admit polygraph evidence, the results of Plaintiff's polygraph examinations, the reliability of the polygraph examinations, or the truth or falsity of matters asserted in Plaintiff's polygraph examinations. (Doc. # 94 at 5.) Defendants seek to elicit expert testimony from Mr. Page as to whether Plaintiff's "claimed psychological conditions, namely anxiety disorder and OCD, would have the effect of preventing him from producing a non-deceptive polygraph examination result." (*Id.*) Therefore, Plaintiff's arguments that polygraphy and polygraph evidence are inadmissible and unreliable, and the case law cited in support thereof, are inapplicable to whether Mr. Page's expert testimony should be entirely excluded.

Plaintiff's final argument that Mr. Page's methodology is not sufficiently reliable or **scientifically** valid is also unavailing. (Doc. # 83 at 6–7; Doc. # 96 at 3.) Again, polygraph evidence is not at issue. Rather, Mr. Page relies on his vast experience and knowledge in administering polygraph examinations and analyzing the results thereof to opine on whether Plaintiff's disabilities and related symptoms impact the results of his polygraph examinations.

Additionally, expert testimony need not be scientific. *Kuhmo Tire Co.*, 526 U.S. at 147–48 (explaining that *Daubert* applies to all experts, not just to "scientific" ones). Indeed, Rule 702's distinction between "scientific" and "other specialized knowledge"

contemplates that not all expert testimony is scientific or relies upon scientific methodology. In Mr. Page's rebuttal report, he articulated that, based on his experience, reactions measured in a polygraph examination span from ".5 to 2 seconds from recognition of the question and return to stasis typically within 5-15 seconds" whereas acute symptoms of GAD and OCD tend to last a minimum of 10 minutes and can last hours. (Doc. # 83-1 at 4–5.) According to Mr. Page, symptoms of those durations "would either be part of the stasis, or baseline readings, of the test, or they would be distortive and cause unscoreable and inclusive results." (*Id.* at 5.) The Court is satisfied that Mr. Page is relying on his specialized experience and knowledge to reach his opinion, and in that vein, is "employ[ing] the same level of intellectual rigor that characterizes" the practice of a polygraph technician. *Kumho Tire*, 526 U.S. at 152. Accordingly, the Court will not exclude Mr. Page from testifying at trial as an expert.

2. <u>Dr. D'Orazio</u>

i. *Whether Dr. D'Orazio is Qualified*

Plaintiff intends to proffer Dr. D'Orazio as an expert in psychology to opine on matters related to the CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP") and its application of the Colorado Sex Offender Management Board ("SOMB") Standards and Guidelines for Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders ("Standards") to Plaintiff. (Doc. # 84-1 at 1–2; Doc. # 86 at 4–5.) Dr. D'Orazio is a psychologist who is the Chief Executive Officer of Central Coast Clinical and Forensic Psychology Services, Inc. and has conducted two independent evaluations of the CDOC's SOTMP Program. (Doc. # 84-1 at 1, 6–7.)

Specific to Plaintiff's claim, Dr. D'Orazio will testify as to whether the SOMB Standards permit the use "other clinical indicators" to verify Plaintiff's sexual history for determining whether Plaintiff can progress in sex offender treatment, and in turn, obtain parole eligibility. (*Id.* at 1–2.)

Defendants contend that Dr. D'Orazio is unqualified to opine on whether Plaintiff's disabilities are the cause of inaccurate polygraph results. (Doc. # 84 at 3, 7–9.) The Court agrees. The Court acknowledges that Dr. D'Orazio has expertise in psychology and treatment of sex offenders and specialized experience and knowledge in evaluating sex offender treatment programs. (Doc. # 84-1 at 6– 32; Doc. # 86 at 4–5.) However, Dr. D'Orazio's deposition testimony, report, and curriculum vitae confirm that she has no specialized training, education, experience, or knowledge in administering polygraph examinations, analyzing the results of a polygraph examination, or assessing the underlying basis for what "bio-medical charts" or characteristics produce particular polygraph results, including non-deceptive or inconclusive results. (*Id.* at 9–10.) Therefore, the Court is unconvinced that Dr. D'Orazio has "achieved a meaningful threshold of expertise" in understanding how the results of polygraph examinations are affected by particular symptoms related to Plaintiff's disabilities. *Levin*, 459 F.3d at 68.

Additionally, Dr. D'Orazio's attempt to incorporate Dr. Kleinasser's opinion as her own does not qualify her to opine on subjects for which Dr. Kleinasser is qualified to opine. Indeed, with no explanation, Dr. D'Orazio merely adopts Dr. Kleinasser's opinion that Plaintiff's "impairments would be expected to substantially limit his major life activities of brain function, concentration, thinking, and communication." (Doc. # 84-1 at

1.) Moreover, she baldly concludes that Plaintiff's disabilities are "likely the cause of his polygraph difficulty" while failing to offer any explication of the basis for such an opinion. Because neither Plaintiff nor Dr. D'Orazio explain the basis for these opinions, Dr. D'Orazio will be precluded from testifying as to whether Plaintiff's alleged disabilities and related symptoms affect the results of his polygraph examinations or substantially limits major life activities.[4]

### ii. Whether Dr. D'Orazio's Testimony is Relevant and Reliable

Defendants' other arguments pertain to whether Dr. D'Orazio's opinion regarding "harm to [Plaintiff] and that his overtreatment is inconsistent with the goals or benefits of SOTMP" is relevant and reliable. (Doc. # 11–14.) A portion of these opinions implicate Dr. D'Orazio's broad statements as to the CDOC's overtreatment and use of polygraph examinations in sex offender treatment in general. (*Id.* at 12; Doc. # 86 at 8; Doc. # 84-1 at 1–2.) Those opinions are entrenched in Dr. D'Orazio's evaluation of the SOTMP as a whole rather than her specific assessment of Plaintiff. (Doc. # 84-1 at 1 ("The independent reviews of the SOTMP and SOMB found over-reliance on polygraph results, improper use of polygraph, and excessive polygraph among the programs' most salient shortcomings.").) Dr. D'Orazio then applies these general opinions to Plaintiff in the form of conclusory statements providing that failure to provide a polygraph waiver for Plaintiff "results in undue hardship, unnecessary deprivation, and over-treatment to" Plaintiff. (*Id.* at 2.) Again, no explanation follows. As such, the Court agrees with

---

[4] Dr. D'Orazio may rely on facts, data, and testimony from Plaintiff's other expert witness Dr. Kleinasser in devising her opinions. However, the Court will not accept Dr. D'Orazio's blanket adoption of Dr. Kleinasser's opinion as expert testimony of her own.

Defendants that Dr. D'Orazio's general criticisms of Colorado's SOTMP Program are irrelevant, and to the extent that she applies those criticisms to Plaintiff, such opinions are unreliable. Therefore, the Court is inclined to exclude such testimony at trial.

However, total exclusion of Dr. D'Orazio is unwarranted. Indeed, Dr. D'Orazio's expert testimony as to the "other clinical indicators" permitted under the SOMB Standards and whether those factors can be utilized to verify Plaintiff's sexual history for the purposes of advancing in his treatment and rehabilitation and becoming eligible for parole are relevant to Plaintiff's claim. Such testimony is also reliable because it is based on Dr. D'Orazio's vast experience with "sex offender treatment modalities[,] Risk Assessment[,] [Risk/Need/Responsivity (RNR)] methodology[,]" and as "sex offender treatment clinician and analyst of sex offender treatment programs[,]"and Colorado's SOTMP in particular. (Doc. # 84-1 at 1–2, 6–32.) Thus, to the extent that Plaintiff seeks to elicit testimony from Dr. D'Orazio that is either beyond the scope of her expertise or that is irrelevant to Plaintiff's claims, the Court will prohibit such testimony and will not rely upon it when issuing an Order following the conclusion of trial.[5]

Accordingly, the parties' expert motions are DENIED.

---

[5] The import of preventing the jury from hearing any unqualified, unreliable, or irrelevant expert testimony is not lost on this Court. However, Plaintiff's claim will be tried to the bench—not a jury. This Court is well-versed in the Federal Rules of Evidence. *See* Christine M. Arguello et. al., Evidence: The Objection Method (Carolina Academic Press, 5th ed. 2016). When the time comes at trial, the Court, as it always does, will fairly discharge its obligation to impose gatekeeping restrictions on unqualified, unreliable, and irrelevant expert testimony.

## IV.    PLAINTIFF'S RULE 37 MOTION TO STRIKE WITNESSES FOR VIOLATIONS OF RULE 26 (DOC. # 82)

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Plaintiff moves to exclude two sets of Defendants' witnesses for two reasons: (1) the first set of witnesses should be excluded because Defendants allegedly violated Rule 26(a)(1)(A)(i) (Doc. # 82 at 2–10); and (2) the second set of witnesses should be excluded because Defendants did not make proper expert disclosures under Rule 26(a)(2) (*id.* at 10–12). With respect to the first reason, Defendants represent that most of the witnesses are impeachment witnesses, and therefore, Defendants were not required to disclose such witnesses under Rule 26(a)(1)(A)(i). (Doc. # 85 at 5–6.) As to the remaining witness, Ms. Ortiz-Marquez, Defendants suggest that any deficient disclosure was harmless. (*Id.* at 5.) Regarding Plaintiff's second reason, Defendants dispute that Ms. Ortiz-Marquez's anticipated testimony is expert in nature. (Doc. # 85 at 8.) Moreover, Defendants argue that Dr. Waters' anticipated testimony will not extend beyond the scope of Plaintiff's affirmative experts' opinions. The Court agrees that neither reason merits total exclusion of these witnesses.

### A.    LEGAL STANDARDS

Rule 26(a)(1)(A)(i) provides:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

> > (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, **unless the use would be solely for impeachment**[.]

(Emphasis added). Moreover, Rule 26(e)(1)(A) provides:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—but supplement or correct its disclosure or response:
>
>> (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise bene made known to the other parties during the discovery process or in writing[.]

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In determining whether failure is harmless, the Court considers "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

## B.    APPLICATION

### 1.    Sought Exclusions Related to Belated Disclosures

The Court rejects Plaintiff's first argument for exclusion of Defendants' first set of witnesses. As a preliminary matter, the witnesses for which Plaintiff seeks exclusion under this basis is murky. Although Plaintiff sets forth a list of Defendants' non-expert

witnesses disclosed in the Final Pretrial Order (Doc. # 79), Plaintiff provides only two descriptions for some of these witnesses. As to witnesses Brian Hoff, Jeff Jenks, Chuck Marshall, Garrick Pridemore, and Thomas Sheely, Plaintiff represents that, "after listing this person as an impeachment witness, which is not necessary, the description of the anticipated testimony adds 'and would be expected to testify as to the polygraph examination administered to Plaintiff.'" (Doc. # 82 at 2 (quoting Doc. # 79).) As to witness Tom Nelson, Plaintiff asserts that he was "not disclosed under Rule 26, at any time." (*Id.*) However, Plaintiff fails to address which Rule 26 violations apply to which witnesses other than specifically discussing Ms. Ortiz-Marquez in his Reply brief. (Doc. # 90 at 4.) Thus, the Court hardly has guidance as to why it should exclude the remaining witnesses left unaddressed by Plaintiff's Motion.[6]

Defendants represent to the Court that Brian Hoff, Jeff Jenks, Chuck Marshall, Garrick Pridemore, Thomas Sheely, Pam Awe, Chelsey Cortese, and Natasha Kindred have been identified as impeachment witnesses who will testify only as necessary to rebut Plaintiff's evidence germane to polygraph examinations and an incident that allegedly occurred on March 8, 2019. (Doc. # 85 at 5.) The Court disagrees with Plaintiff that Defendants' use of the phrase "would be expected to testify" to modify the witnesses identified in the Final Pretrial Order automatically means that Defendants will call on such witnesses to support their defenses. In light of Defendants' representations

---

[6] For example, other than stating that Defendants identified the following individuals in their Third Supplemental Disclosures on the last day of discovery, Plaintiff fails to specifically explain why Pam Awe, Doug Carpenter, Chelsey Cortese, Cathy Cousins, Anthony Getzburg, and Natasha Kindred should be excluded.

that these witnesses will be offered only for impeachment purposes, their exclusion is unnecessary. Fed. R. Civ. P. 26(a)(1)(A)(i).

However, whether Ms. Ortiz-Marquez will be excluded merits further discussion. On August 29, 2018, Plaintiff identified Ms. Ortiz-Marquez as a witness with discoverable information that Plaintiff may use to support his claims in his Rule 26(a)(1) Initial Disclosures Pleading. (Doc. # 73-1 at 3.) Plaintiff indicated that Ms. Ortiz-Marquez possessed "knowledge of" the SOMB Standards, including the lifetime supervision criteria, LS 4.210, the SOTMP program, ADA protection for CDOC inmates, and that she had "interaction, participation or involvement with Plaintiff" regarding his allegations. (*Id.* at 3.) Yet, Plaintiff chose not to depose Ms. Ortiz-Marquez.

On the last day of discovery, April 22, 2019, Defendants disclosed Ms. Ortiz-Marquez as a witness under Rule 26(a)(1)(A) and indicated that she is "likely to have discoverable information about circumstances surrounding the claims and defenses asserted in this case." (Doc. # 82-1 at 1.) On May 22, 2019, Ms. Ortiz-Marquez provided a sworn affidavit in support of Defendants' Motion for Summary Judgment. (Doc. # 67-1 at 2–10.) In response to Defendants' Motion for Summary Judgment, Plaintiff challenged Defendants' purportedly belated disclosure of Ms. Ortiz-Marquez. (Doc. # 72 at 9–12.) Yet, Plaintiff chose not to file any motion with the Court.

On July 16, 2019, the parties filed their Proposed Final Pretrial Order in which Defendants identified Ms. Ortiz-Marquez as a non-expert witness that would be present at trial. (Doc. # 76 at 7.) On August 2, 2019, Magistrate Judge Tafoya entered the Final Pretrial Order in which Ms. Ortiz-Marquez was still identified one of Defendants' will-call

non-expert witnesses. (Doc. # 79 at 7.) It was not until August 28, 2019, that Plaintiff finally acted on the matter and filed his Motion seeking to exclude Ms. Ortiz-Marquez from trial pursuant to Rule 37(c)(1).

The Court agrees with Defendants that any untimely supplemental disclosure of Ms. Ortiz-Marquez as a witness under Rule 26(a)(1)(A)(i) or Rule 26(e) was harmless. (Doc. # 85 6–7); *Woodwork's Supply, Inc.*, 170 F.3d at 993. Plaintiff cannot claim prejudice resulting from Defendants' failure to disclose Ms. Ortiz-Marquez as a witness until April 22, 2019, when Plaintiff identified her as a witness in his own Initial Disclosures on the very same subject matter more than a year ago. Moreover, at the time Plaintiff discovered this alleged Rule 26 violation on May 22, 2019, such a violation could have been cured. For example, the Court could have ordered that Ms. Ortiz-Marquez's deposition be taken out of time and permitted supplemental briefing for Motions for Summary Judgment. Furthermore, at that time, trial had not been set; indeed, it was not until August 5, 2019, that this Court set a three-day bench trial to commence on December 9, 2019. (Doc. # 81.) Plaintiff fails to explain why he waited over three months (and after trial was scheduled) to file the instant Motion. Hence, the reason why the purported Rule 26 violation cannot now be cured is because Plaintiff horded any opportunity to devise a cure away from Defendants and the Court. Additionally, the Court sees no evidence or argument demonstrating that Defendants acted in bad faith. Therefore, to the extent Defendants committed a Rule 26 violation as to their disclosure of Ms. Ortiz-Marquez, such violation was harmless.

Accordingly, Ms. Ortiz-Marquez will not be excluded from testifying at trial.

2. <u>Sought Exclusions Related to Expert Disclosures</u>

Next, Plaintiff contends that the second set of witnesses, Ms. Ortiz-Marquez and Dr. Waters,[7] should be excluded from trial because Defendants did not properly disclose their supposed expert testimony in accordance with Rule 26(a)(2). (Doc. # 82 at 10–12.) The Court disagrees.

As to Ms. Ortiz-Marquez's proffered testimony, the Court has reviewed her affidavit in support of Defendants' Motion for Summary Judgment and the summary of her proffered testimony set forth in the Final Pretrial Order. (Doc. # 67-1 at 2–10; Doc. # 79 at 7.) It is clear that Ms. Ortiz-Marquez will be testifying as a fact witness based on her personal experience with and knowledge of CDOC regulations, SOTMP, SOMB Standards, and Plaintiff's participation in the SOTMP program. As such, Defendants were not required to provide Rule 26(a)(2) expert disclosures as to her.

The Court is also unpersuaded by Plaintiff's argument that Defendants' description of Dr. Waters' anticipated rebuttal testimony in the Final Pretrial Order evinces a disguised attempt to side step Rule 26(a)(2) and admit expert testimony beyond the scope of Plaintiff's proffered expert testimony. (Doc. # 82 at 10–11; Doc. # 90 at 6–7.) On February 15, 2019, Defendants disclosed Dr. Waters as a non-retained rebuttal expert who would opine as follows:

---

[7] The Court observes that both parties use inconsistent titles to describe Travis Waters. Throughout Plaintiff's briefing, Plaintiff refers to Travis Waters as Mr. Waters. Throughout Defendants' briefing and various pleadings, Defendants refer to Travis Waters as "Mr. Waters" and "Dr. Waters." Although the Court will clarify his title at the November 21, 2019 Final Trial Preparation Conference, throughout this Order, the Court refers to Travis Waters as "Dr. Waters."

> Dr. Waters will recount that the Plaintiff was included in the treatment
> decision process by asking what had been an effective treatment for his
> symptoms in the past. Dr. Waters will testify that he prescribed the exact
> same psychiatric medication that the Plaintiff declared was effective in the
> past because, in his professional opinion, it would adequately treat the
> Plaintiff's presenting psychiatric complaint if taken as directed. Dr. Waters
> will attest that Plaintiff declined the opportunity to take advantage of the
> treatment provided. Dr. Waters will opine that the Plaintiff was not
> compliant with CDOC psychiatric recommendations for medication which
> would enhance Plaintiff's ability to benefit from sex offense-specific
> treatment.

(Doc. # 82-2 at 2.) On August 2, 2019, Magistrate Judge Tafoya entered the Final

Pretrial Order in which Defendants described Dr. Waters' anticipated testimony as

follows:

> Mr. Waters is expected to testify as to his treatment of Plaintiff, to include
> any medication prescribed and whether that medication would be
> adequate to treat Plaintiff's presenting complaints.

(Doc. # 79 at 12.)

Upon review of both descriptions, any difference is miniscule and does not justify

exclusion of Dr. Waters' testimony in its entirety. The Court agrees with Defendants that

Dr. Waters' anticipated testimony would rebut components of Plaintiff's proffered expert

testimony, including Dr. Kleinasser's opinion that Plaintiff's "current psychiatric condition

will continue to reduce his capacity to successfully provide non-deceptive polygraphs."

(Doc. # 71-1 at 34.) To the extent that Defendants seek to elicit testimony beyond the

scope of the Plaintiff's affirmative expert testimony at trial, the Court will address

Plaintiff's objections at that time. However, Plaintiff's fear of what Dr. Waters **might** say

at trial based on Plaintiff's tea leaf interpretation of how Dr. Waters' anticipated

testimony was described in the Final Pretrial Order does not warrant exclusion of Dr. Waters' testimony in its entirety.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Objection to United States Magistrate Order on Motion to Strike Defendants' Rebuttal Expert Witness (Doc. # 66) is OVERRULED.

2. Magistrate Judge Tafoya's Decision Denying Plaintiff's Motion to Strike Defendants' Rebuttal Expert Witness (Doc. # 63) is AFFIRMED.

3. Plaintiff's Motion to Exclude from Admission at Trial All Evidence and Testimony of Defendants' Witness Jason A. Page (Doc. # 83) is DENIED.

4. Defendants' Motion to Exclude Expert Testimony of Dr. D'Orazio pursuant to Federal Rule of Evidence 702 (Doc. # 84) is DENIED.

5. Plaintiff's Rule 37 Motion to Strike Witnesses for Violations of Rule 26 (Doc. # 82) is DENIED.

DATED: November 15, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge