IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-01357-CMA-KMT

SCOTT A. BEEBE,

    Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARTMENT OF CORRECTIONS,

    Defendants.

---

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT (DOC. ## 67, 71)**

---

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 67) and Plaintiff's Amended Rule 56 Motion for Summary Judgment (Doc. # 71). Both motions arise under the Americans with Disabilities Act. Plaintiff Scott A. Beebe is currently a Colorado Department of Corrections inmate and is enrolled in a sex offender treatment program. He asserts that he cannot obtain the benefits of sex offender treatment and become eligible for parole unless the CDOC grants his accommodation request that the CDOC verify his sexual history through the utilization of "other clinical indicators" rather than through polygraph examinations. This is so because Plaintiff's disabilities allegedly cause inaccurate polygraph results. Verification is essential to successful completion of sex offender treatment, and in turn, parole eligibility. For the reasons that follow, both Motions are denied.

# I. BACKGROUND

Plaintiff was convicted and sentenced to probation for a Colorado sex offense on April 13, 2002. Probation was revoked on November 30, 2007, and Plaintiff was resentenced to a minimum mandatory two years to life indeterminate sentence to the Colorado Department of Corrections ("CDOC"), which was modified on May 13, 2009, to reflect the opportunity for discretionary rather than mandatory parole. Plaintiff is currently an inmate at the Centennial Correctional Facility ("CCF") within the CDOC. (Doc. # 35 at ¶¶ 5, 10–11.)

At all times throughout his incarceration, Plaintiff alleges that he has had "mental impairments of Axis I: 300.02 Generalized Anxiety Disorder, with Panic Disorder; Axis I: 2000.4 Persistent Depressive Disorder, which includes Major Depressive Disorder, and Axis II: 301.4 Obsessive/Compulsive Personality Disorder (OCD)." (*Id.* at ¶ 8.) Plaintiff further asserts that such mental impairments "substantially limit [his] concentration, thinking, communicating, and brain function." (*Id.* at ¶ 9.) Moreover, Plaintiff contends that these mental impairments cause him to experience "excessive anxiety and worry, restlessness, and difficulty concentrating, accompanied by overstimulation of his nervous system, accelerated heart rate, shortness or irregularity of breath, muscle tension and dizziness, all of which are exacerbated by the prospect of and actual taking of a polygraph." (Doc. # 35 at ¶ 22.)

Plaintiff has been and currently is admitted to and participating in the Sex Offender Treatment and Monitoring Program ("SOTMP"). (*Id.* at ¶¶ 4, 12.) To qualify for permission to receive parole, Plaintiff must earn a "Successful Progress" status by

meeting seven treatment criteria, the second of which is central to this case. (*Id.* at ¶¶ 15–17.) The second criterion requires "verification of sexual history 'through *either* the . . . polygraph . . . *or* other clinical indicators" ("Second Criterion"). (*Id.* at ¶ 17 (quoting Colo. Sex Offender Mgmt. Bd., Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders 304, LS 4.210(A) (April 2018)) (emphasis in original).) The SOMB Standards provide that "other clinical indicators" may include "scores on dynamic risk assessments" and "behavioral observations." (*Id.* at ¶ 19 (internal citations omitted).)

Plaintiff alleges that he routinely fails the polygraph component of the Second Criterion as a result of his alleged disabilities. (*Id.* at ¶¶ 18, 22–23.) As such, Plaintiff requested an Americans with Disabilities Act ("ADA") accommodation from Defendants, seeking a waiver of the polygraph test and the ability to use "other clinical indicators" so that he can meet the Second Criterion. (*Id.* at ¶¶ 24–38); (Doc. # 62 at 2). Defendants denied Plaintiff's request. (Doc. # 35 at ¶¶ 25, 32–34.)

On June 1, 2018, Plaintiff filed suit against Defendants (Doc. # 1), and on September 24, 2018, Plaintiff filed his Amended Complaint (Doc. # 35), wherein he asserted a single claim for Violation of Title II of the ADA. Although Plaintiff asserts one claim for declaratory relief under 42 U.S.C. § 12132 (*id.* at 11–14), he contends that there are two separate bases giving rise to violations of 42 U.S.C. § 12132. First, Plaintiff argues that Defendants deny him the meaningful opportunity to progress in the Colorado Sex Offender Treatment Program ("SOTMP") by failing to accommodate his request for a polygraph waiver. (Doc. # 71 at 1–2.) Second, Plaintiff avers that

Defendants deny him the meaningful opportunity to be rehabilitated under the SOTMP program because he "is being psychologically harmed by use of the polygraph in treatment" rather than being rehabilitated, which is a recognized benefit of the SOTMP program. (*Id.* at 2.) Plaintiff moves for summary judgment only as to the second basis for Defendants' alleged 42 U.S.C. § 12132 violation.

Defendants move for summary judgment on Plaintiff's ADA claim because Defendants contend that the undisputed material facts demonstrate that Plaintiff cannot establish that he is an individual otherwise qualified to obtain parole eligibility and that he is a disabled individual under the ADA. (Doc. # 67 at 13–15.) Defendants also argue that the undisputed evidence shows that the CDOC is not excluding Plaintiff from participating in SOTMP, and even if Plaintiff was excluded from receiving the benefits of SOTMP, such exclusion is not because of his disability. (*Id.* at 16–17.) Defendants' final argument provides that the undisputed evidence evinces that any accommodation in the form of a polygraph waiver would fundamentally alter SOTMP "as it relates to Plaintiff and that is not required under the ADA." (*Id.* at 17–19.)

## II.     <u>LEGAL STANDARD</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs.*, Inc., 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v.*

4

*Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the initial burden is met, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. ANALYSIS

**A. RELEVANT LAW**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Prisons are "public entities" covered by Title II of the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208–09 (1998); *Villa v. D.O.C. Dep't of Corr.*, 664 F. App'x 731, 734 (10th Cir. 2016). To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132); *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

### 1. Qualified Individual with a Disability

With respect to the first element, under the ADA, "disability" means a "'physical or mental impairment that substantially limits one or more of the major life activities' of an individual." *Robertson*, 500 F.3d at 1193–94 (quoting 42 U.S.C. § 12102(2)(A)). Under the ADA, "it is the plaintiff's burden to establish that he has an actual or perceived disability." *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016) (citing *Steele v. Thiokol Corp.*, 241 F.3d 1248, 1253 (10th Cir. 2001)). "To establish the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2)

identify one or more appropriate major life activities, and (3) show that the impairment substantially limits one or more of those activities." *Scavetta v. Dillon Cos., Inc.*, 569 F. App'x 622, 624 (10th Cir. 2014) (quoting *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007)). Under the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12102(2)(B) defines "major life activities" to include the "operation of a major bodily function, including . . . the functions of the . . . brain."

Upon implementation of the ADAAA, the Equal Employment Opportunity Commission promulgated federal regulations to provide guidance on construction of the newly amended ADA. *Russell*, 184 F. Supp. 3d at 1268. Among these regulations, and pertinent to the instant action, 29 C.F.R. § 1630.2(j)(3)(iii) provides that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . "major depressive disorder . . . [and] obsessive compulsive disorder . . . substantially limit brain function." The "ADAAA was intended 'to correct what [Congress] viewed as an overly restrictive interpretation of the [ADA's] terms that had been adopted by the Supreme Court . . . .'" *Id.* (quoting *Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1144 (10th Cir. 2011)). Although the "ADAAA was intended to broaden the scope of individuals that may qualify as disabled," "the ADAAA does not relieve a plaintiff of his burden to come forward with evidence that any limitations of a major life activity are caused by a mental or physical impairment." *Id.* (citing *Felkins v. City of Lakewood*, 774 F.3d 647, 652–53 (10th Cir. 2014)).

Indeed, contrary to Plaintiff's assertion otherwise (Doc. ## 71 at 4–5; 72 at 6), the Tenth Circuit does not recognize a *per se* disability in ADA cases. *Scavetta*, 569 F.

7

App'x at 622 ("There is no 'per se' disability.") (quoting 29 C.F.R. § 1630, App'x, at § 1630.2(j)(3)). The ADA still requires an individualized assessment to determine "whether an impairment substantially limits a major life activity." *Id.* "Although the term 'substantially limits' is not meant to be a demanding standard," the regulations express that "not every impairment will constitute a disability." *Id.* (quoting 29 C.F.R. § 1630 App'x, at § 1630.2(j)(1)(i)–(ii)). The question of whether an impairment substantially limits a major life activity is ordinarily a question of fact for the jury and requires some evidence. *Id.* In other words, "it is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity." *Id.* (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012)).

Additionally, the Tenth Circuit has explained that under "either the ADA or the Rehabilitation Act," a plaintiff must "show that he was 'otherwise qualified' for the benefits he sought and that he was denied those 'solely by reason of disability.'" *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993)). In fact, 42 U.S.C. § 12131(2) defines "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable modification to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity."

2. <u>Discrimination by Reason of Disability</u>

Regarding the third element, Courts have recognized three ways to establish a disability discrimination claim: (1) intentional discrimination (disparate treatment); (2)

disparate impact; and (3) failure to make a reasonable accommodation. *Villa*, 664 F. App'x at 734. The third approach is at issue in the instant action. With respect to a failure to accommodate claim, "[t]he ADA requires more than physical access to public entities: it requires public entities to provide '*meaningful access*' to their programs and services." *Robertson*, 500 F.3d at 1195 (emphasis in original). Indeed, 42 U.S.C. § 12134(a) requires the Department of Justice to promulgate regulations to implement the nondiscrimination mandate of Title II. *Robertson*, 500 F.3d at 1195; *see* 42 U.S.C. § 12134(a). The regulation at issue provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). As a result, public entities must provide reasonable accommodations to disabled persons. *Albuquerque Pub. Schs.*, 813 F.3d at 1299.

"A public entity must provide a reasonable accommodation under the ADA when it knows that the individual is disabled and 'requires an accommodation of some kind to participate in or receive the benefits of its services.'" *Id.* (quoting *Robertson*, 500 F.3d at 1197–98. A public entity is on notice that an individual needs an accommodation when it knows that an individual requires one because either the need is obvious or the individual requests an accommodation. *Id.*

In ADA claims implicating 28 C.F.R. § 35.130(b)(7)'s mandate that public entities provide reasonable modifications, the Tenth Circuit has applied the following burden-shifting framework. *See McCulley v. Univ. of Kan. Sch. of Med.*, 591 F. App'x 648, 650–

9

51 (10th Cir. 2014) (applying burden-shifting framework in reviewing Title II ADA claim and holding that the defendant public entities "carried their burden to show that [the plaintiff's] request would constitute a fundamental alteration within the meaning of 28 C.F.R. § 35.130"); *Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 919–20 (10th Cir. 2013) (applying burden-shifting framework in reviewing Title II ADA claim where disabled student sought modification of medical school program requirements under 28 C.F.R. § 35.130(b)(7)); *see also Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1105–06 (D. Colo. 2000) (applying burden-shifting analysis of Title I ADA employment claim to Title III ADA claim implicating 28 C.F.R. § 35.130(b)(7)); *Gandy v. Russell*, Case No. 09-cv-00205-CMA-KMT, 2011 WL 2038602, at *6–7 (D. Colo. Jan. 10, 2011) (applying burden-shifting analysis in Title II ADA case implicating 28 C.F.R. § 35.130(b)(7)); *Gandy v. Zavaras*, No. 09-cv-00205-CMA-KMT, 2010 WL 551408, at *5, 7 (D. Colo. Feb. 11, 2010) (same); *Belancio v. Kan. Dep't of Health and Env't*, Case No. 17-cv-1180-EFM, 2018 WL 4538451, at *8 (D. Kan. Sept. 21, 2018) (applying burden-shifting framework in Title II ADA claim implicating modification sought under 28 C.F.R. § 35.130(b)(7)).[1]

First, the plaintiff bears the burden to show that he requested a reasonable accommodation or modification in the public entity's policies, practices, or procedures that are necessary to avoid discrimination. *Gandy*, 2011 WL 2038602 at *6–7; *Belancio*,

---

[1] The Court observes that neither party cited to a case in which the burden-shifting framework was applied to a Title II ADA case involving a prisoner or parolee requesting a polygraph waiver as a form of ADA accommodation request. Moreover, upon review of federal case law, the Court similarly did not identify a case with facts similar to the instant action. As such, this case raises issues of first impression.

2018 WL 4538451 at *8. 28 C.F.R. § 35.130(b)(7) makes clear that the plaintiff must demonstrate (1) that "an accommodation" is "necessary to avoid discrimination on the basis of disability," and (2) that the accommodation is reasonable. *Grider v. City of Aurora*, No. 10-CV-00722-MSK-MJW, 2013 WL 3927661, at *3 (D. Colo. July 30, 2013). With respect to the first part, the phrase "on the basis of" intimates a causation inquiry requiring plaintiff to show that, "but for his disability, he would have been able to access the services or benefits desired." *Id.* (citing *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee,* 465 F.3d 737, 751–52 (7th Cir. 2006)). "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050–51 (10th Cir. 2017).

Once the plaintiff produces sufficient evidence that a reasonable accommodation exists, the burden shifts to defendant to present evidence that the modification would "fundamentally alter" the nature of the public service, program, or benefit. *Dahlberg*, 92 F. Supp. 2d at 1106; *Belancio*, 2018 WL 4538451 at *8.[2] "The type of evidence which satisfies" the public entity's burden "focuses on the specifics of the plaintiff's or defendant's circumstances, and not on the general nature of the accommodation." *Dahlberg*, 92 F. Supp. 2d at 1106. Therefore, the "ultimate question is whether making the plaintiff's proposed modification, given his or her individualized circumstances, would fundamentally alter the defendant's service." *Id.*

---

[2] The Tenth Circuit also recognizes the second part of this framework as the "fundamentally alter" affirmative defense in ADA claims arising under 28 C.F.R. § 35.130(d)'s desegregation mandate. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180–81 (10th Cir. 2003) (explaining that public entity has burden to establish that accommodation would fundamentally alter nature of service, program, or activity in ADA integration case arising under 28 C.F.R. § 35.130(d)). In these cases, public entities bear the burden to prove that the reasonable modification would fundamentally alter the nature of the public services, activities, or benefits.

11

**B. MOTIONS FOR SUMMARY JUDGMENT**

1. <u>Plaintiff's Amended Rule 56 Motion for Summary Judgment</u>

In Plaintiff's Amended Rule 56 Motion for Summary Judgment, Plaintiff contends that he is entitled to judgment as a matter of law on the theory that, under 42 U.S.C. § 12132, he is being denied meaningful access to receive the service of rehabilitative sex offender treatment because Defendants' use of the polygraph examination causes psychological harm to Plaintiff. (Doc. # 71 at 2.) The Court understands this theory as follows. Assuming the request for a polygraph waiver constitutes a reasonable accommodation, when Defendants fail to accommodate Plaintiff, and that failure causes psychological harm to Plaintiff, Plaintiff has automatically established an ADA violation arising under 42 U.S.C. § 12132 because the psychological harm makes Plaintiff worse and stunts his rehabilitation. As such, Defendants' failure to accommodate Plaintiff denies Plaintiff access to the rehabilitative services of sex offender treatment. However, Plaintiff's theory is flawed.

As a preliminary matter, there is no Supreme Court or Tenth Circuit case law that supports this theory. The Court set forth the applicable law governing Plaintiff's Title II ADA claim. Not one court in those referenced cases held, much less recognized, that if the defendant's failure to accommodate the plaintiff causes psychological harm to the plaintiff, then the plaintiff has automatically established an ADA violation notwithstanding any affirmative defenses. The Court declines to be the first.

Additionally, Plaintiff's collection of authority in support of this theory is unavailing. He cites a string of cases for the proposition that a failure to accommodate

that causes harm to a plaintiff gives rise to an ADA violation. (Doc. # 75 at 6–7.) Those cases emanate no such principle. *See Bailey v. Minn. Dep't of Corr.*, No. C6-03-6996, 2005 WL 901835, at * (Minn. Dist. Ct. Feb. 18, 2005) (concluding that defendants discriminated against plaintiff under the ADA by failing to provide plaintiff with ASL interpreter in connection with plaintiff's participation in sex offender treatment and awarding plaintiff damages for emotional harm under Minnesota discrimination law); *S.L. v. City Hosp. Inc.*, 377 F. Supp. 3d 626, 632 (N.D. W. Va. 2019) (denying motion to dismiss ADA claim for failure to make reasonable modification to medical decisions of treating plaintiff child with autism because whether "medical decisions were reasonable or discriminatory is a question of fact"); *Wood v. Cty. of Alameda*, No. C 94 1557 THE, 1995 WL 705139, at *2, 11, 16 (N.D. Cal. Nov. 17, 1995) (holding that defendant employer failed to reasonably accommodate plaintiff employee through reassignment where plaintiff employee was diagnosed with PTSD, anxiety, and depressive disorders); *Doe v. Deer Mtn. Day Camp, Inc.*, 682 F. Supp. 2d 324, 338 (S.D.N.Y. 2010) (granting summary judgment in favor of Plaintiff's ADA claim and holding that defendant discriminated against plaintiff when defendant refused to admit him into summer basketball camp because of plaintiff's HIV diagnosis).

Accordingly, as a matter of law, the Court determines that the second basis for Plaintiff's Title II ADA claim is not a viable one, and as such, Plaintiff's Amended Rule 56 Motion for Summary Judgment (Doc. # 71) is DENIED.

2. <u>Defendants' Motion for Summary Judgment</u>

Against the aforementioned backdrop of the law, upon review of the briefing[3] and pertinent record, the Court determines that several genuine disputes of material fact exist and warrant denial of both parties' Motions for Summary Judgment.[4] Specifically, the parties vehemently dispute the following material facts[5] that preclude entry of summary judgment in favor of either party:

- Whether Plaintiff's alleged impairments substantially limit one or more major life activities;
- Whether Plaintiff is otherwise qualified to receive the benefit of parole eligibility;
- Whether Plaintiff is otherwise qualified to progress in sex offender treatment;
- Whether Plaintiff requested a reasonable modification to Defendants' SOTMP Program as applied to either a polygraph waiver request with respect to the Second Criterion of the SOMB Standards or a general polygraph waiver for all requisite polygraph examinations in sex offender treatment, subsequent supervised release conditions, and parole eligibility criterion;
- Whether Defendants can utilize "other clinical factors" to verify Plaintiff's sexual history;

---

[3] Specifically, the Court has reviewed Doc. ## 67, 71, 72, 73, 74, and 75, including all attached appendices.
[4] Even if the Court did not reject the second theory underlying Plaintiff's ADA claim, these genuine disputes of material fact compel denial of Plaintiff's motion for summary judgment.
[5] This list does not reflect all of the genuine disputes of material fact that exist.

- Whether Plaintiff's alleged disabilities cause inaccurate polygraph examination results; and

- Whether Plaintiff's sought polygraph waiver as an ADA accommodation fundamentally alters the nature of the sex offender treatment program and rehabilitation services.

Accordingly, in sum, because genuine issues of fact remain concerning Plaintiff's ADA claim, summary judgment is improper.

## IV.     **CONCLUSION**

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment (Doc. # 67) and Plaintiff's Amended Rule 56 Motion for Summary Judgment (Doc. # 71) are DENIED.

DATED:  November 22, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge