IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-01357-CMA-KMT

SCOTT A. BEEBE,

    Plaintiff,

v.

STATE OF COLORADO, and
COLORADO DEPARTMENT OF CORRECTIONS,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS AS MOOT

This matter is before the Court on Defendants' Motion to Dismiss as Moot (Doc. # 106). Having reviewed the Motion, pertinent record, and relevant law, the Court finds that Plaintiff's claim is moot, which deprives this Court of subject matter jurisdiction.

### I.    BACKGROUND

Plaintiff was convicted and sentenced to probation for a Colorado sex offense on April 13, 2002. Probation was revoked on November 30, 2007, and Plaintiff was resentenced to a minimum mandatory two years to life indeterminate sentence to the Colorado Department of Corrections ("CDOC"), which was modified on May 13, 2009, to reflect the opportunity for discretionary rather than mandatory parole. Plaintiff is currently an inmate at the Centennial Correctional Facility within the CDOC. (Doc. # 35 at ¶¶ 5, 10–11.)

At all times throughout his incarceration, Plaintiff alleges that he has had "mental impairments of Axis I: 300.02 Generalized Anxiety Disorder, with Panic Disorder; Axis I: 2000.4 Persistent Depressive Disorder, which includes Major Depressive Disorder, and Axis II: 301.4 Obsessive/Compulsive Personality Disorder (OCD)." (*Id.* at ¶ 8.) Plaintiff further asserts that such mental impairments "substantially limit [his] concentration, thinking, communicating, and brain function." (*Id.* at ¶ 9.) Moreover, Plaintiff contends that these mental impairments cause him to experience "excessive anxiety and worry, restlessness, and difficulty concentrating, accompanied by overstimulation of his nervous system, accelerated heart rate, shortness or irregularity of breath, muscle tension and dizziness, all of which are exacerbated by the prospect of and actual taking of a polygraph." (*Id.* at ¶ 22.)

Plaintiff has been and currently is admitted to and participating in the Sex Offender Treatment and Monitoring Program ("SOTMP"). (*Id.* at ¶¶ 4, 12.) To qualify for permission to receive parole, Plaintiff must earn a "Successful Progress" status by meeting seven treatment criteria, the second of which is central to this case. (*Id.* at ¶¶ 15–17.) The second criterion requires "verification of sexual history 'through *either* the . . . polygraph . . . *or* other clinical indicators" ("Second Criterion"). (*Id.* at ¶ 17 (quoting Colo. Sex Offender Mgmt. Bd., <u>Standards and Guidelines for the Assessment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders</u> 304, LS 4.210(A) (April 2018)) (emphasis in original).) The Sex Offender Management Board ("SOMB") Standards provide that "other clinical indicators" may include "scores on dynamic risk assessments" and "behavioral observations." (*Id.* at ¶ 19.)

2

Plaintiff alleges that he routinely fails the polygraph component of the Second Criterion as a result of his alleged disabilities. (*Id.* at ¶¶ 18, 22–23.) As such, Plaintiff requested an Americans with Disabilities Act ("ADA") accommodation from Defendants, seeking a waiver of the polygraph test and the ability to use "other clinical indicators" so that he can meet the Second Criterion. (*Id.* at ¶¶ 24–38); (Doc. # 62 at 2). Defendants denied Plaintiff's request. (Doc. # 35 at ¶¶ 25, 32–34.)

On June 1, 2018, Plaintiff filed suit against Defendants (Doc. # 1), and on September 24, 2018, Plaintiff filed his Amended Complaint (Doc. # 35), wherein he asserted a single claim for Violation of Title II of the ADA. Specifically, Plaintiff sought "declaratory judgment and relief against Defendants in the form of an order enjoining Defendants to allow Plaintiff's requested reasonable accommodation of polygraph waiver in sex offender treatment and supervision." (*Id.* at 14.) Although Plaintiff's Amended Complaint did not so specify, at the Final Trial Preparation Conference, Plaintiff represented that he also seeks a polygraph waiver during his time on parole.[1]

Both parties moved for summary judgment (Doc. ## 67, 71), which the Court denied. (Doc. # 105.) At the Final Trial Preparation Conference on November 21, 2019, Defendants represented to the Court that, recently, Plaintiff had been more "open" about his history with his treatment providers, and this openness permitted his treatment

---

[1] Indeed, the face of Plaintiff's accommodation request confirms that he requested the purported "reasonable accommodation of a complete and total waiver (exclusion) from all polygraph testing and polygraph testing requirements in completing SOTMP, meeting all criteria receiving a parole recommendation, and a complete and total waiver (exclusion) from all future polygraph testing and polygraph testing requirements (without any added/non-standard program requirements or other forms of testing) in any further sex offender treatment or while on parole." (Doc. # 97-1 at 1.)

providers to use "other clinical indicators" to verify his sexual history. (Doc. # 108 at 13.) As a result, Plaintiff progressed in treatment and Defendants determined that he met the listed criteria, including the Second Criterion, and recommended him for parole. (*Id.*) In fact, he is scheduled to appear before the Colorado State Parole Board ("Parole Board") on December 9, 2019—the same day that trial in the instant action is to commence. (*Id.*)

Given Plaintiff's successful progression in sex offender treatment and that Defendants are no longer requiring him to submit to a polygraph examination, Defendants filed their Motion to Dismiss as Moot (Doc. # 106) and therein argue that those recent developments have rendered Plaintiff's claim as moot. Additionally, Defendants aver that the Court has no authority to decide whether Plaintiff is entitled to a polygraph waiver while on parole because whether he will obtain parole is speculative and, even if he obtains parole, the Parole Board and private actors, not Defendants, set conditions, rules, and regulations that govern Plaintiff's parole. (Doc. # 106 at 9–11; Doc. # 106-1 at 8, ¶ 20, 20.) The instant Motion implicates foundational principles of Article III—standing and mootness. As such, the Court considers whether recent developments in the case divest it of subject matter jurisdiction to resolve Plaintiff's action for declaratory and injunctive relief.

## II.     LEGAL STANDARDS

### A.     STANDING

The United States Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. CONST. art. III, § 2, cl. 1. At the start of litigation, a plaintiff must show standing under Article III by demonstrating: "(1) an injury in fact; (2) a causal

4

connection between the injury and the challenged action; and (3) a *likelihood that a favorable decision will redress the injury.*" *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) (emphasis in original) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

The Supreme Court has defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief. *Sosa*, 654 F.4d at 1019 (citing *Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 192 (3d Cir. 1990)).

**B.    MOOTNESS**

The doctrine of mootness is grounded in Article III's limitation on the jurisdiction of federal courts to "cases and controversies." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015). Mootness "is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). The law is clear that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016). "Mootness deprives federal courts of jurisdiction." *United States v. Zamora*, 2019 WL 5214000, *2 (10th Cir. Oct. 15, 2019) (citing *Schnell v. OXY USA Inc.*, 814 F.3d 1107,

1114 (10th Cir. 2016) ("If a case becomes moot, we have no subject-matter jurisdiction.")).

A suit "becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome[,]" *Chafin v. Chafin*, 568 US. 165, 172 (2017), or "if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Brown*, 822 F.3d at 1165 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The central question "is whether granting a present determination of the issues offered will have some effect in the real world." *Id.* at 1165–66. "Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Id.* at 1165 (quoting *Ind*, 801 F.3d at 1213).

A "plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations "take[] [it] into the area of **speculation and conjecture**." *Sosa*, 654 F.3d at 1025 (emphasis added) (quoting *O'Shea*, 414 U.S. at 497). When courts in the Tenth Circuit apply the mootness doctrine in the declaratory judgment context, "[i]t is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff.*" *Id.* (emphasis in original) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109–10 (10th Cir. 2010)). In other words, where a plaintiff seeks a declaratory judgment, "he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint."

6

*Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) ("A declaratory judgment . . . is no different from any other judgment. It will constitute relief . . . if, and only if, it affects the behavior of the defendant toward the plaintiff.")).

A declaratory judgment that seeks only to "affect the (**uncertain**) future conduct of third parties—who are not named in a plaintiff's complaint—would involve the very sort of speculative, '**hypothetical**' factual scenario that would render such a judgment a prohibited advisory opinion." *Id.* (emphases added).[2] The controversy must be "real and substantial . . . admitting of specific relief through a decree of conclusive character, as distinguished from an opinion of advising what the law would be upon a hypothetical set of facts." *Id.* at 1026 (citing *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

Accordingly, in a mootness inquiry in the declaratory relief setting, courts must determine whether the plaintiff has named defendants "who are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights[;]" if plaintiff fails to name such defendants, courts cannot furnish the plaintiff with effective declaratory relief and the action is moot. *Id.*

**C. VOLUNTARY CESSATION EXCEPTION TO DOCTRINE OF MOOTNESS**

As the Tenth Circuit has explained, there are two exceptions to the mootness doctrine—that is, "situations in which a case remains subject to federal court jurisdiction notwithstanding the seeming extinguishment of any live case or controversy." *Brown*,

---

[2] Indeed, under the federal Declaratory Judgment Act, "Congress has authorized declaratory judgments only" in cases of actual controversy. *Sosa*, 654 F.3d at 1025 (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

822 F.3d at 1166. The relevant exception in this case concerns "voluntary cessation" of the defendant's conduct. Under this exception, "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). The rule is designed to prevent gamesmanship. *Brown*, 822 F.3d at 1166. If voluntary cessation automatically mooted a case, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* (citation omitted).

A defendant's voluntary cessation may moot a case if the defendant carries "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted). Voluntary actions will moot litigation upon satisfaction of two conditions "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1115 (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). The Supreme Court has described this burden as "heavy," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007), and "stringent," *Friends of the Earth, Inc.*, 528 U.S. at 189.

"But the burden is not insurmountable, especially in the context of government enforcement." *Brown*, 822 F.3d at 1167. Where courts decline to moot a controversy following a government officials' voluntary cessation, the decisions "rely on *clear*

*showings* of reluctant submission [by governmental actors] and a desire to return to the old ways." *Rio Grande Silvery Minnow*, 601 F.3d at 1117 (brackets and emphasis in original) (quoting 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3533.6, at 311 (3d ed.2008)). "The party asserting mootness bears the heavy burden of persua[ding] a court that the challenged conduct cannot reasonably be expected to start up again." *Id.* at 1115. In mootness cases, whether the wrongful conduct can "reasonably be expected to recur" is "squarely a legal determination." *Brown*, 822 F.3d at 1168 (quoting *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1188 n.15 (11th Cir. 2007)).

### III. ANALYSIS

#### A. MOOTNESS REGARDING RELIEF AS TO PRISON CONDITIONS

Defendants contend that Plaintiff's recent successful progression in sex offender treatment have mooted the instant action. Specifically, Defendants posit that Plaintiff's willingness to discuss his sexual history and identified risk factors have permitted Defendants to use "other clinical indicators" to verify Plaintiff's sexual history and, as such, Defendants no longer require Plaintiff to undergo polygraph examinations. (Doc. # 106 at 4.) In fact, Defendants issued a "positive recommendation for parole" for Plaintiff to the Parole Board. (*Id.*) Based on these developments, Defendants argue that "any decision made by this Court will have no effect in the real world[,]" and as a result, "this matter has been rendered moot[.]" (*Id.* at 5 (quotation marks omitted).)

Defendants also aver that the voluntary cessation exception to the doctrine of mootness does not apply because the record is devoid of evidence indicating that

Defendant caused these developments for the purpose of depriving this Court of jurisdiction. (*Id.* at 6–7.) Defendants further represent that polygraph examinations are utilized only if Plaintiff is unwilling to discuss or acknowledge areas of risk. (*Id.* at 7.) In other words, Plaintiff's conduct is what will determine whether he must undergo a polygraph examination in the future.

In Plaintiff's Response to the Motion to Dismiss, he contends that Plaintiff's case is not moot because "there were a lot of uncertainties with everything and much subject to the subjective and speculative[.]" (Doc. # 107 at 2.) At the Final Trial Preparation Conference, Plaintiff's counsel further raised the concern that if Plaintiff "is not given a waiver, [Defendants] could pop a polygraph on him at any [] time if they think he is not being forthcoming or whatever, when they have all these other clinical indicators to work with to get him to be forthcoming." (Doc. # 108 at 18.) The Court disagrees with Plaintiff and concludes that his claims should be dismissed as moot without prejudice.

First, the Court agrees with Defendants that it cannot fashion a remedy that has "some effect in the real world." *Brown*, 822 F.3d at 1165–66. Indeed, Plaintiff "no longer suffers actual injury that can be redressed by a favorable judicial decision." *Id.* at 1165 (quoting *Ind*, 801 F.3d at 1213). He requested declaratory and injunctive relief requiring Defendants to waive the polygraph and use "other clinical indicators" so that he could obtain parole eligibility. Defendants have provided Plaintiff with a polygraph waiver, utilized "other clinical indicators" to determine that Plaintiff has successfully progressed in sex offender treatment, and recommended Plaintiff for parole. At this juncture, assuming arguendo that Plaintiff would prevail at trial, the Court could do no more than

issue a "retrospective opinion that [Plaintiff] was wrongfully harmed by the defendant." *Sosa*, 654 F.3d at 1025. The "satisfaction of a declaration that a person was wronged" does not fulfill the purpose of declaratory and injunctive relief, which "is to have some effect on the defendant's conduct toward the plaintiff." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994); *see also Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Therefore, because Plaintiff's successful progression in sex offender treatment and parole eligibility have extinguished any live controversy or case before the Court, Plaintiff's claims are moot.

Furthermore, the voluntary cessation exception cannot revitalize Plaintiff's claim. The Defendants have met their burden of "showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Brown*, 822 F.3d at 1166 (citation omitted); *Rio Grande Silvery Minnow*, 601 F.3d at 1115. Defendants have conveyed to the Parole Board that Plaintiff has achieved "Successful Progress" in the SOTMP program and recommended him for parole. (Doc. # 106 at 4–5); (Doc. # 106-1 at 7–8, ¶¶ 12–19; 12–14.) Plaintiff's meeting with the Parole Board is set for December 9, 2019. (Doc. # 106-1 at ¶ 19.) Given the close proximity in time between now and Plaintiff's parole meeting, the Court finds that the likelihood of recurrence of Defendants' alleged misconduct is small.

Accordingly, the voluntary cessation exception does not revive Plaintiff's ADA claim from mootness.

## B. STANDING REGARDING RELIEF AS TO PAROLE CONDITIONS

Title II of the ADA undoubtedly applies to state parole decisions. *Sardakowski v. Romero*, 776 F. App'x 979 (10th Cir. 2019) (citing *Thompson v. Davis*, 295 F.3d 890, 896, 898 (9th Cir. 2002)); *Garrett v. Bd. of Cty. Comm'rs of Fremont Cty.*, No. 18-cv-02868-DDD-STV, 2019 WL 3997085, at *10–11 (D. Colo. Aug. 23, 2019) (recognizing that Title II of the ADA applies to parole decisions in determining that parole board did not discriminate against plaintiff regarding parole revocation); *Hughes v. Colo. Dep't of Corr. et. al.*, 594 F Supp. 2d 1226, 1244–45 (D. Colo. 2009) (recognizing that Title II of the ADA applies to the parole board in determining that plaintiff failed to state a claim against parole board). "Like state prisons, state parole boards 'fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Thompson*, 295 F.3d at 898 (citing *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211–12 (1998) (quoting 42 U.S.C. § 12131(1)(B)). Indeed, both the CDOC and the Parole Board are state agencies, created pursuant to Colo. Rev. Stat. §§ 24-1-128.5 and 17-2-201. *Hughes*, 594 F. Supp. 2d at 1233 (citing *Hoffler v. Colo. Dep't of Corr.*, 27 P.3d 371, 374 (Colo. 2001)).

Colo. Rev. Stat. § 17-2-201 delineates the structure of the Parole Board and its duties and responsibilities, including the discretion to "promulgate rules governing the granting and revocation of parole." Colo. Rev. Stat. § 17-2-201(3)(a). As to any person who was convicted of (1) an offense involving unlawful sexual behavior as defined in section 16-22-102(9) and committed such offense on or after July 1, 1996, but prior to

July 1, 2002, or (2) an offense pursuant to the provisions part 10 of article 1.3 of title 18, C.R.S., and committed such offense on or after November 1, 1998, the Parole Board has the sole power "to grant or refuse to grant parole and fix the conditions thereof, and set the duration of the term of parole granted" subject to various limitations. *Id.* § (4)(f)(II)(5)(a.5), (a.7).

Plaintiff has failed to establish standing to assert a claim for declaratory and injunctive relief against the Parole Board and Defendants regarding the conditions of Plaintiff's anticipated parole. As a preliminary matter, the Parole Board is a public entity distinct from the CDOC and is not a defendant in the instant action. As a matter of Colorado law, the CDOC does not have authority to formulate or modify parole conditions—let alone order the Parole Board to provide or modify parole conditions. That authority resides only with the Parole Board. Because Plaintiff seeks parole conditions that include a polygraph waiver, this Court is unable to order the **present** parties to alter their behavior towards Plaintiff that would accomplish the relief sought without rendering an improper advisory opinion. *Sosa*, 654 F.3d at 1025–26.[3]

Additionally, Plaintiff has failed to establish an "injury in fact" in support of his requested relief regarding parole conditions. To this point, Plaintiff contends that this Court "would have jurisdiction to grant declaratory relief as to the waiver of the polygraph **when/if** Plaintiff is out on parole." (Doc. # 107 at 2 (emphasis added).) However, that is precisely the problem. That the Parole Board or an anticipated

---

[3] An order that guides *third parties* who are not parties to an action "in their future interactions with a plaintiff is insufficient" to establish a live controversy or case. *Sosa*, 654 F.3d at 1026.

Community Supervision Team[4] will violate Plaintiff's ADA rights amounts to speculation. Indeed, it is hypothetical to assume that the Parole Board will grant Plaintiff with parole. Even if parole was granted, it is still speculative to predict potential parole conditions. Such conjectural or hypothetical injury to Plaintiff is insufficient to constitute the "injury in fact" necessary to establish standing. *Lujan*, 504 U.S. at 560; *Sosa*, 654 F.3d at 1019.

Accordingly, Plaintiff lacks standing to assert any claim for declaratory and injunctive relief as applied to future parole conditions.

## IV.     CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss as Moot (Doc. # 106) is GRANTED.

2. Plaintiff's Amended Complaint (Doc. # 35) is DISMISSED WITHOUT PREJUDICE.

3. The three-day bench trial set to commence on December 9, 2019, at 8:00 AM, is VACATED.

DATED:  November 30, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[4] The Court also notes that with respect to any future Community Supervision Team, some private treatment providers implement their own rules and regulations, which may encompass the use of polygraph examinations. Given the hypothetical nature of any future parole conditions, including those that require compliance with a treatment provider's rules and regulations, it is clear that Plaintiff's Amended Complaint is devoid of allegations that establish an "injury in fact" as to relief sought related to parole.